UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| DENNIS C. MCELRATH; 2149 LAUWILIWILI LLC; and CD INVESTMENTS LIMITED PARTNERSHIP,<br><br>     Appellants,<br><br>  vs.<br><br>NAN, INC.,<br><br>     Appellee,<br><br>  and<br><br>RICHARD A. YANAGI; and U.S. TRUSTEE, OFFICE,<br><br>     Trustees. | CIV. NO. 22-00047 LEK-WRP |
| DENNIS C. MCELRATH; CD INVESTMENTS LIMITED PARTNERSHIP; and 2149 LAUWILIWILI LLC,<br><br>     Appellants,<br><br>  vs.<br><br>NAN, INC.; and RICHARD A. YANAGI,<br><br>     Appellees. | CIV. NO. 22-00307 LEK-WRP |

**ORDER DENYING APPELLANTS' CONSOLIDATED APPEAL AND AFFIRMING THE BANKRUPTCY COURT'S JANUARY 18, 2022 ORDER AND JULY 1, 2022 ORDER**

On January 31, 2022, Defendant/Appellant Dennis C.
McElrath ("McElrath") filed his Notice of Appeal and Statement
of Election ("CV 22-047 Appeal" or "Nan Claim Appeal"). [Notice
of Transmittal to District Court, filed 1/31/22 (dkt. no. 1), at

PageID.2-7.]  On July 15, 2022, McElrath filed another Notice of Appeal and Statement of Election ("CV 22-307 Appeal" or "Sale Order Appeal").  [McElrath v. Nan, Inc., et al., CV 22-00307 LEK-WRP ("CV 22-307"), dkt. no. 1-1.[1]]  The CV 22-047 Appeal and the CV 22-307 Appeal were consolidated on July 27, 2022 (collectively "Appeal" or "Consolidated Appeal").  [EO, filed 7/27/22 (dkt. no. 18) (granting the joint motion to consolidate).]  On August 1, 2022, Defendants/Appellants 2149 Lauwiliwili LLC ("Lauwiliwili") and CD Investments Limited Partnership ("CDI") filed a Notice of Appeal and Statement of Election joining in the CV 22-307 Appeal.[2]  [Dkt. no. 19-1.]

The Opening Brief of Appellants was filed on February 15, 2023.  [Dkt. no. 31.]  The Amended Opening Brief of Appellants was filed on February 16, 2023.  [Dkt. no. 34.]  On March 17, 2023, Creditor/Appellee Nan, Inc. ("Nan") and Trustee/Appellee Richard A. Yanagi ("Yanagi" or "Trustee" and collectively "Appellees") filed their Answering Brief.  [Dkt. no. 41.]  The Reply Brief of Appellants was filed on March 31, 2023.  [Dkt. no. 44.]  The Court finds this matter suitable for disposition without a hearing pursuant to Rule LR7.1(c) of the

---

[1] Unless otherwise specified, all citations in this Order refer to the filings in CV 22-047.

[2] McElrath, Lauwiliwili, and CDI will be referred to collectively as "Appellants" or "McElrath Defendants."

Local Rules of Practice for the United States District Court for the District of Hawaii ("Local Rules").  Appellants' Consolidated Appeal is hereby denied, and the bankruptcy court's orders are affirmed, for the reasons set forth below.

## BACKGROUND

The parties' respective briefs provide a detailed account of the background of the Chapter 7 bankruptcy case and related proceedings.[3]  The Court, however, only provides the facts relevant to the instant Consolidated Appeal.  Around 2009, FOPCO, Inc. ("FOPCO" or "Debtor") and Nan entered into a series of agreements to pursue a bid for a Multiple Award Construction Contract ("MACC") through the United States Naval Facilities Division ("NAVFAC").  See Appendix to Principal Brief of Appellants ("Appellants App'x"), filed 2/16/23 (dkt. no. 32), App'x No. 7 (Written Testimony for Trial/Evidentiary Hearing – BK 18-1084), Decl. of Dennis C. McElrath ("McElrath Decl.") at ¶¶ 6, 11.[4]  Accordingly to FOPCO, issues began when FOPCO discovered that Nan was purportedly invoicing it for amounts not due under their agreements.  See id. ¶¶ 32-35.

_____

[3] The bankruptcy proceedings are In re FOPCO, Inc., BK 18-01084 ("BK 18-1084"), and Yanagi v. McElrath, et al., AP 20-90014 ("AP 20-90014" or "the Adversary Case").

[4] At that time, McElrath was FOPCO's sole shareholder, and he submitted the McElrath Declaration on FOPCO's behalf. [McElrath Decl. at ¶ 2.]

On September 23, 2018, FOPCO filed a Chapter 7 bankruptcy petition.  See Appellants App'x No. 1 (Voluntary Petition for Non-Individuals Filing for Bankruptcy).  On September 24, 2018, Yanagi was appointed as the Trustee of FOPCO.  See BK-18-1084, Notice of Chapter 7 Bankruptcy Case -- No Proof of Claim Deadline, filed 9/24/18 (dkt. no. 3), at § 5. On January 2, 2019, Lauwiliwili and McElrath filed claims against FOPCO.  See Appellees' Joint Supplemental Appendix of Excerpts of Record ("Appellees App'x"), filed 3/17/23 (dkt. no. 42), App'x C (District of Hawaii Claims Register for BK 18-1084) at 2.  On January 7, 2019, Nan filed a claim against FOPCO for $3,525,655.50 related to subcontractor billings and profit-sharing ("Nan Claim").  See Appellees App'x D (Nan, Inc. Proof of Claim signed 1/4/19) at PageID.1417.  In July 2020, the Trustee initiated the Adversary Case against Appellants, claiming that FOPCO made fraudulent transfers totaling approximately $3,000,000 to Appellants.  See generally AP 20-90014, Adversary Complaint, filed 7/10/20 (dkt. no. 1).

On August 13, 2020, McElrath objected to the Nan Claim in BK 18-1084.  See generally Appellants App'x No. 4 (Objection to Claim No. 10-2).  The evidentiary hearings for the objection to the Nan Claim occurred from November 8 to November 10, 2021. See Appellants App'x Nos. 18-20 (Transcripts of Evidentiary Hearing Day 1 through Day 3).  On January 18, 2022, the

4

bankruptcy court "ordered that Nan [held] an allowed unsecured claim against FOPCO in the amount of . . . $3,142,795.85." [Appellants App'x No. 22 (emphasis omitted) (Findings of Fact, Conclusions of Law, and Order on Objection to Claim of Nan, Inc. ("Nan Claim Order")) at 19.]  McElrath appealed the Nan Claim Order on January 31, 2022.  See generally Nan Claim Appeal.

On March 28, 2022, the Trustee filed a motion to approve a settlement between him and Appellants in the Adversary Case, which was scheduled for hearing on April 25, 2022.  See Appellants App'x No. 24 (Motion to Approve Settlement Agreement with Defendants McElrath, 2149 Lauwiliwili LLC and CD Investment Limited Partnership ("the Settlement Motion")).  Nan opposed the Settlement Motion.  See Appellants App'x No. 25 (Nan's opposition to the Settlement Motion, filed 4/10/22).  A hearing for the Settlement Motion was held on May 16, 2022, where Nan made an oral offer of $3,142,000 for the estate's litigation claims against Appellants.  See Appellants App'x No. 34 (Transcript of Hearing on Motion to Approve Settlement ("5/16 Settlement Motion Hearing Trans.")) at 1, 5.  The bankruptcy court verbally approved Nan's offer.  See id. at 6.  On July 1, 2022, the bankruptcy court issued its Findings of Fact, Conclusions of Law, and Order Denying Trustee's Motion to Approve Settlement Agreement with Defendants McElrath, 2149 Lauwiliwili LLC and CD Investment Limited Partnership and

Authorizing Sale of Estate's Avoidance Claims to Nan, Inc. ("Sale Order").  See Appellants App'x No. 36.  Appellants filed their Sale Order Appeal on July 15, 2022.

As to the Nan Claim Appeal, Appellants argue the bankruptcy court erred by allowing the Nan Claim because Nan failed to show that it was entitled to profits, and the bankruptcy court failed to apply the plain language of the agreements between the parties.  As to the Sale Order Appeal, Appellants contend the bankruptcy court erred because it did not provide proper notice by approving Nan's offer rather than granting the Settlement Motion.  Further, Appellants argue the bankruptcy court improperly substituted its own judgment rather than deferring to the Trustee's business judgment.

## STANDARD

"In deciding an appeal from a bankruptcy court decision, the court applies a clearly erroneous standard to the bankruptcy court's findings of fact.  The court reviews the bankruptcy court's conclusions of law de novo."  In re Hawaiian Airlines, Inc., 355 B.R. 225, 228 (D. Hawai`i 2006) (citing In re Lazar, 83 F.3d 306, 309 (9th Cir. 1996)).

## DISCUSSION

### I.   Nan Claim Appeal

The Ninth Circuit has provided the framework regarding a proof of claim as follows:

6

Section 501 of Title 11 of the United States Code allows creditors a means to present their claims against a debtor to the bankruptcy court by filing a proof of claim. See 11 U.S.C. § 501. Whether such a claim for which a proper proof has been filed is "allowable" is a matter for determination pursuant to 11 U.S.C. § 502 and the procedural rules governing the bankruptcy courts. These rules and our case law have put in a place a general procedure to allocate the burdens of proof and persuasion in determining whether a claim is allowable.

A proof of claim is deemed allowed unless a party in interest objects under 11 U.S.C. § 502(a) and constitutes "*prima facie* evidence of the validity and amount of the claim" pursuant to Bankruptcy Rule 3001(f). See also Fed. R. Bankr. P. 3007. The filing of an objection to a proof of claim "creates a dispute which is a contested matter" within the meaning of Bankruptcy Rule 9014 and must be resolved after notice and opportunity for hearing upon a motion for relief. See Adv. Comm. Notes to Fed. R. Bankr. P. 9014.

Upon objection, the proof of claim provides "some evidence as to its validity and amount" and is "strong enough to carry over a mere formal objection without more." Wright v. Holm (In re Holm), 931 F.2d 620, 623 (9th Cir. 1991) (quoting 3 L. King, Collier on Bankruptcy § 502.02, at 502-22 (15th ed. 1991)); see also Ashford v. Consolidated Pioneer Mort. (In re Consol. Pioneer Mort.), 178 B.R. 222, 226 (9th Cir. BAP 1995), *aff'd*, 91 F.3d 151, 1996 WL 393533 (9th Cir. 1996). To defeat the claim, the objector must come forward with sufficient evidence and "show facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves." In re Holm, 931 F.2d at 623.

. . . .

"If the objector produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts to the

claimant to prove the validity of the claim by a preponderance of the evidence." In re Consol. Pioneer, 178 B.R. at 226 (quoting In re Allegheny Int'l, Inc., 954 F.2d 167, 173-74 (3d Cir. 1992)).  The ultimate burden of persuasion remains at all times upon the claimant.  See In re Holm, 931 F.2d at 623.

Lundell v. Anchor Constr. Specialists, Inc., 223 F.3d 1035, 1039 (9th Cir. 2000).

Appellants first argue Nan failed to establish that the invoices were legally enforceable against FOPCO and, therefore, the bankruptcy court's finding that Nan had a claim was clearly erroneous.  See Amended Opening Brief at 15-16.

The bankruptcy court followed the appropriate burden-shifting framework when assessing claim objections. Specifically, the bankruptcy court found that "[a]s the objecting party, Mr. McElrath bears the initial burden of coming forward with sufficient facts that carry probative force at least equal to the allegations contained in the proof of claim." [Nan Claim Order at 16-17 & n.8 (citing Lundell v. Anchor Const. Specialist, Inc., 223 F.3d 1035, 1039 (9th Cir. 2000)).]  Thus, McElrath – not Nan – had the initial burden to establish, by preponderance of the evidence, facts showing the invoices were not legally enforceable.  The bankruptcy court agreed with McElrath, however, insofar as Nan did not provide all of its invoices to substantiate the entirety of its claim.  Thus, the bankruptcy court reduced Nan's expenses by $240,236.47.  See id.

at 11.  As to other specific expenses, the bankruptcy court

concluded that

> [t]he evidence submitted by Nan is sufficient to
> establish that Nan is entitled to collect unpaid
> costs, retentions, and coefficient properly
> attributable to the fifteen open task orders in
> the amount of $1,815,630.37, minus $98,024.00 for
> general excise tax that Nan billed but was not
> entitled to collect and $240,236.47 of
> unsubstantiated amounts, leaving a net amount of
> $1,477,369.60.

[Id. at 11–12.]

Appellants argue Nan did not provide any evidence that

it made payments to the second-tier subcontractors and any such

payments were not contractually required.  See Amended Opening

Brief at 17.  The bankruptcy court addressed these arguments,

finding that Nan did provide evidence regarding the payments to

second-tier subcontractors, except as to the invoices totaling

$240,236.47, which were excluded from the claim.  Moreover, the

bankruptcy court found that,

> [i]n some cases, the amount that Nan ultimately
> paid a second-tier contractor was larger or
> smaller than the subcontract amount.  These
> differences were the result of informal change
> order agreements between Nan and the affected
> second-tier subcontractors to which FOPCO agreed
> (and even if FOPCO had not agreed, Nan had the
> final say on such matters). . . .
>
> . . . . Nan has adequately explained that
> many of these payments were attributable to
> changes in the second-tier subcontractor's scope
> of work, corrections of mathematical errors, or
> similar factors, were immaterial, or resulted in
> overall savings in light of other changes.

9

[Appellants App'x No. 22 (Nan Claim Order) at 10–11.]

Appellants essentially ask this Court to conclude that the bankruptcy court's analysis and calculation of expenses was erroneous because the bankruptcy court improperly weighed certain evidence as more probative than other evidence.  See Amended Opening Brief at 23–26.  But, "[i]f the [lower] court's account of the evidence is plausible in light of the record viewed in its entirety, the [reviewing court] may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently."  Barnes v. Field, 600 B.R. 830, 835 (D. Hawai`i 2019) (some alterations in Barnes) (quoting Anderson v. City of Bessemer, 470 U.S. 564, 573–74, 105 S. Ct. 1504, 84 L. Ed. 2d 518 (1985)).  After reviewing the bankruptcy court's calculation of expenses and its reliance on certain evidence, such as witness testimony, this Court cannot conclude that the bankruptcy court's findings were clearly erroneous.  See In re Retz, 606 F.3d 1189, 1196 (9th Cir. 2010) ("When factual findings are based on determinations regarding the credibility of witnesses, we give great deference to the bankruptcy court's findings, because the bankruptcy court, as the trier of fact, had the opportunity to note 'variations in demeanor and tone of voice that bear so heavily

on the listener's understanding of and belief in what is said.'" (quoting Anderson, 470 U.S. at 575, 105 S. Ct. 1504)).

　　　　To the extent that Appellants contend the payments to the second-tier subcontractors were contrary to the agreements between Nan and McElrath, Appellants fail to show the bankruptcy court erred in finding that the payments were proper under their agreements.  The bankruptcy court found that the estimates Nan provided to FOPCO for the task order bids were not a firm fixed price, and there was "no evidence that either FOPCO or Nan intended at the time that the estimates would be treated in that fashion."  [Appellants App'x No. 22 (Nan Claim Order) at 7.] Additionally, the bankruptcy court found that "Nan and FOPCO would make decisions about bids and performance of the work collaboratively, but that, if they could not agree, Nan would have the final say.  It would be absurd to require Nan to present formal change orders to FOPCO if Nan could approve those changes over FOPCO's objection."  [Id. at 7–8.]  The bankruptcy court also relied on McElrath's testimony:

> Mr. McElrath's argument is inconsistent with his own testimony.  When asked, "But for each individual task order, there was never a firm fixed price subcontract with Nan for its performance, correct?", Mr. McElrath answered, "Correct."  Mr. Lee, the other witness called by Mr. McElrath, agreed.

[Id. at 8 (citations omitted).]  Appellants do not sufficiently address any of these findings.  Thus, Appellants have not shown

that the bankruptcy court erred in finding that the invoices were legally enforceable against FOPCO.

Appellants also contest the bankruptcy court's finding that Nan was not required to submit expense changes in writing. Appellants state the governing agreements between Nan and FOPCO "provided that FOPCO would not be liable to Nan for additional expenses absent written notification and approval." [Amended Opening Brief at 17.]  The bankruptcy court disagreed with Appellants' contention, finding that the Profit and Coefficient Agreement between FOPCO and Nan provided that Nan had the final say in the execution of the work orders.  See Nan Claim Order at 7-8.  The Profit and Coefficient Agreement states Nan "shall also have final authority to make decisions regarding the execution of each Task Order based on [Nan]'s determination that such execution decisions are in the best interest of the teaming arrangement." [Appellees App'x O at PageID.1873-77 (Profit and Coefficient Agreement) at ¶ 6.2.]  The bankruptcy court reasoned that it would be illogical if Nan had final authority to make decisions regarding the execution of work orders, but it would need to get FOPCO's approval for expense changes related to the work orders.  See Nan Claim Order at 8.  Such an interpretation is reasonable, and Appellants do not address the bankruptcy court's reliance on paragraph 6.2 of the Profit and Coefficient Agreement.

12

Appellants argue the bankruptcy court erroneously interpreted the parties' intent when it determined that Nan was not required to submit written change order requests.  See Amended Opening Brief at 19.  Appellants' contention is without merit.  The bankruptcy court read the different provisions of the governing agreements and construed them together, ultimately interpreting them to be consistent with one another.  This Court, therefore, concludes that the bankruptcy court's finding that Nan was not required to submit written change order requests was not clearly erroneous.

Appellants additionally argue Nan and FOPCO were bound by "a pay-if-paid provision."  See id. at 18.  The bankruptcy court addressed this argument, stating that one of the agreements

> includes a "pay if paid" provision, meaning that FOPCO as prime contractor was obligated to pay Nan for work as subcontractor only if NAVFAC paid FOPCO for that work under the prime contract. FOPCO argues that Nan did not prove that NAVFAC paid for Nan's work, so the "pay if paid" provision bars Nan's claim.  This argument is shocking because Mr. McElrath's own testimony refutes it.  When I asked Mr. McElrath, "Did NAVFAC pay everything that NAVFAC was required to pay under these 15 task orders to FOPCO's understanding?", Mr. McElrath answered, "Yes, sir."  Therefore, the "pay if paid" provision does not bar Nan's claim.

[Appellants App'x No. 22 (Nan Claim Order) at 9.]  Appellants do not contest the bankruptcy court's reliance on McElrath's

testimony in finding that the pay-if-paid provision did not bar Nan's claim. They therefore have not shown that the bankruptcy court's finding was clearly erroneous.

Ultimately, Appellants have failed to show that the bankruptcy court committed clear error because the bankruptcy court's findings were "plausible"; that is, after revieing the bankruptcy court's ruling, this Court is not "left with the **definite and firm conviction** that a mistake has been committed." Cooper v. Harris, 581 U.S. 285, 309 (2017) (emphasis added) (quotation marks and citation omitted). As such, the Nan Claim Appeal is denied.

## II.  **Sale Order Appeal**

Appellants argue the bankruptcy court erred when it turned the hearing on the Settlement Motion into the sale of the claims in the Adversary Case to Nan. See Amended Opening Brief at 28. Appellees first contend there is not an active case or controversy as to the sale of the claims in the Adversary Case because: (1) McElrath withdrew its offer at the May 16, 2022 settlement hearing and, as such, he lacks standing; and (2) Nan has already paid the purchase price for the claims and, thus, the Sale Order Appeal is equitably moot. See Answering Brief at 15–16. Neither argument persuades this Court.

A.   <u>**Standing**</u>

Appellants rebut Appellees' first contention, arguing that even if McElrath withdrew his offer, his withdrawal was contingent on the bankruptcy court's acceptance of Nan's oral offer at the hearing on the Settlement Motion.  <u>See</u> Reply Brief at 13.  The record indicates as such.  After Nan made the oral offer, counsel for McElrath stated, "so if the Court is not inclined today to approve what is an otherwise reasonable settlement offer that the parties within the litigation had negotiated, I have been advised by my client that we will be withdrawing the settlement offer . . . ."  [Appellants App'x No. 34 (5/16 Settlement Motion Hearing Trans.) at 5.]  In effect, Appellants contend that, by turning the settlement hearing into a sale of the claims to Nan, the bankruptcy court caused McElrath to withdraw his offer that was previously negotiated with the Trustee.  Thus, to the extent that Appellants argue the bankruptcy court should have only ruled on the settlement offer between McElrath and the Trustee – and not the offer Nan made to the Trustee – there is an active case or controversy and Appellants have standing to challenge the bankruptcy court's ruling.  <u>See generally</u> <u>In re E. Coast Foods, Inc.</u>, 66 F.4th 1214, 1218–19 (9th Cir. 2023) (providing the requirements for standing in a bankruptcy context).

15

B.   **Equitable Mootness**

Appellees contend that the Sale Order Appeal is equitably moot because Nan has paid the purchase price for the claims in the Adversary Case and, therefore, the Sale Order is complete.

> Equitable mootness occurs when a "comprehensive change of circumstances' has occurred so 'as to render it inequitable for this court to consider the merits of the appeal." In re Roberts Farms, 652 F.2d 793, 798 (9th Cir. 1981).  The question is whether the case "present[s] transactions that are so complex or difficult to unwind that the doctrine of equitable mootness would apply." Lowenschuss v. Selnick (In re Lowenschuss), 170 F.3d 923, 933 (9th Cir. 1999). . . .
>
> We endorse a test similar to those framed by the circuits that have expressed a standard: We will look first at whether a stay was sought, for absent that a party has not fully pursued its rights.  If a stay was sought and not gained, we then will look to whether substantial consummation of the plan has occurred.  Next, we will look to the effect a remedy may have on third parties not before the court.  Finally, we will look at whether the bankruptcy court can fashion effective and equitable relief without completely knocking the props out from under the plan and thereby creating an uncontrollable situation for the bankruptcy court. . . .

In re Thorpe Insulation Co., 677 F.3d 869, 880-81 (9th Cir. 2012) (some alterations in In re Thorpe).  Here, Appellants sought a stay, which was denied by this Court.  See Appellants' Motion for Stay of Adversary Proceeding 20-90014 or Sale of Adversary Claims Pending Appeal, filed 11/23/22 (dkt. no. 21); Order Denying Appellants' Motion for Stay of Adversary

16

Proceeding 20-90014 or Sale of Adversary Claims Pending Appeal, filed 2/27/23 (dkt. no. 37) ("Motion for Stay Order").[5]  Because Appellants filed a stay and it was not granted, this Court must determine whether the sale has been substantially consummated. Appellees state the sale of the claims has occurred and undoing the sale would be difficult to undo.  See BK 18-1084, Trustee's Report of Sale, filed 10/17/22 (dkt. no. 428).

> The Bankruptcy Code defines substantial
> consummation as: (a) transfer of all or
> substantially all of the property proposed by the
> plan to be transferred; (b) assumption by the
> debtor or by the successor to the debtor under
> the plan of the business or of the management of
> all or substantially all of the property dealt
> with by the plan; and (c) commencement of
> distribution under the plan.  11 U.S.C.
> § 1101(2).

In re Thorpe, 677 F.3d at 882.

As the Report of Sale states, the Trustee received $3,142,000 from Nan for the bankruptcy estate's 95% interest in all causes of action in the Adversary Case, "together with any and all claims arising from or related to the transactions described in the Adversary [Case] . . . ."  [BK 18-1084, Report of Sale at 2.]  The bankruptcy court authorized the Trustee to pay the estate's estimated 2022 federal and state income taxes totaling approximately $508,000.  See id., Trustee's Motion to

---

[5] The Motion for Stay Order is also available at 2023 WL 2248385.

Approve Payment of Administrative Expense and Notice of
Opportunity to Object, filed 3/7/23 (dkt. no. 448); Order
Granting Trustee's Motion to Approve Payment of Administrative
Expense, filed 4/6/23 (dkt. no. 466), at 2.  Because the sale
has been finalized and the Trustee has been authorized to make
tax payments for the sale, this Court concludes that the sale of
the claims has been substantially consummated.

        Neither party addresses the effect that a remedy may
have on third parties not before the court.  Regardless, this
Court "must evaluate whether modification of the [sale] would
bear unduly on the innocent.  An important consideration is
whether all the parties affected by the appeal are before the
court."  See In re Thorpe, 677 F.3d at 882 (citations and
internal quotation marks omitted).  All the parties affected by
the Sale Order Appeal are before this Court.  Moreover, "it is
possible to alter [the sale] . . . in a way that does not affect
third party interests to such an extent that the change is
inequitable."  See id.  Thus, this factor does not weigh in
favor of a finding that the Sale Order Appeal is equitably moot.

        "Fourth, and most importantly, [this Court] look[s] to
whether the bankruptcy court on remand may be able to devise an
equitable remedy."  See id. at 883.  The bankruptcy court could
fashion effective relief by ordering the Trustee to return the
money to Nan and ordering Nan to relinquish all interest in the

18

claims that it purchased.  Although the bankruptcy court
authorized the Trustee to pay income taxes on the proceeds from
the sale, that does not necessarily mean that effective relief
is not possible, albeit possibly burdensome.  The Ninth Circuit
has generally held that equitable mootness does not apply when a
claim is for monetary damages from a solvent debtor, such as
here.  See e.g., id.; In re Sylmar Plaza, L.P., 314 F.3d 1070,
1074 (9th Cir. 2002) ("Even if the plan has been substantially
consummated, because Platinum's claim is only for monetary
damages against solvent debtors, this is not a case in which it
would be impossible to fashion effective relief."); In re
Mortgs. Ltd., 771 F.3d 1211, 1217 (9th Cir. 2014) (holding that
the consolidated appeals were equitably moot, in part, because
party was not "solely seeking monetary damages from a solvent
debtor" (citing Sylmar, 314 F.3d at 1074)).

        In light of the possibly that the bankruptcy court
could devise an equitable remedy, this Court concludes that the
Sale Order Appeal is not equitably moot.

        C.    **Merits of the Sale Order Appeal**

        Appellants argue the bankruptcy court assumed the
Trustee's role in selling the claims in the Adversary Case and

disregarded the procedural requirements for a sale under 11
U.S.C. § 363.[6]  See Amended Opening Brief at 28.

### 1.  **Notice**

> [Fed. R. Bankr. P.] 9019 provides that,
> "[o]n motion by the trustee and after notice and
> a hearing, the court may approve a compromise or
> settlement."  The court may approve a compromise
> or settlement only when it is "fair and
> equitable."  In re A & C Props., 784 F.2d [1377,]
> 1381 [(9th Cir. 1986)].  The settlement should be
> in the best interests of the estate and
> "reasonable, given the particular circumstances
> of the case."  Id.  And while a court generally
> gives deference to a trustee's business judgment
> in deciding whether to settle a matter, the
> trustee "has the burden of persuading the
> bankruptcy court that the compromise is fair and
> equitable and should be approved."  Id.  "Because
> the bankruptcy judge is uniquely situated to
> consider the equities and reasonableness of a
> particular compromise, approval or denial of a
> compromise will not be disturbed on appeal absent
> a clear abuse of discretion."  United States v.
> Alaska Nat'l Bank of the N. (In re Walsh Constr.,
> Inc.), 669 F.2d 1325, 1328 (9th Cir. 1982).

In re Isom, BAP No. ID-19-1198-BGL, 2020 WL 1950905, at *6
(B.A.P. 9th Cir. Apr. 22, 2020) (some alterations in In re
Isom), *aff'd*, 836 F. App'x 562 (9th Cir. 2020).

> "When confronted with a motion to approve a
> settlement under Rule 9019(a), a bankruptcy court
> is obliged to consider, as part of the fair and
> equitable analysis, whether any property of the
> estate that would be disposed of in connection
> with the settlement might draw a higher price
> through a competitive process and be the proper

---

[6] Many of the same arguments that Appellants raise in the
Sale Order Appeal were discussed and rejected by this Court in
the Motion to Stay Order.  This Court addresses the arguments
again, however, for the sake of completeness.

> subject of a section 363 sale." [In re Mickey
> Thompson Ent. Grp., Inc., 292 B.R. 415,] 421–22
> [(B.A.P. 9th Cir. 2003)].  Whether to impose
> formal sale procedures, however, is ultimately a
> matter of discretion that depends on the dynamics
> of the particular situation.  Id. at 422.  See
> also Adeli v. Barclay (In re Berkeley Del. Ct.,
> LLC), 834 F.3d 1036, 1040 (9th Cir. 2016).  In
> other words, the court need not implement bidding
> procedures and an auction if the case does not
> call for it.  Sterling v. Green (In re Esterlina
> Vineyards & Winery, LLC), BAP No. NC-16-1428-
> TaBS, 2018 WL 1354331, at *4 (9th Cir. BAP
> Mar. 13, 2018).

Id. at *9.  Appellants argue they did not receive adequate

notice of the sale of the claims to Nan.  See Amended Opening

Brief at 28-29.  In the Motion for Stay Order, this Court

addressed Appellants' notice argument:

> Fed. R. Bankr. P. 6004(a) states: "Notice of a
> proposed use, sale, or lease of property, other
> than cash collateral, not in the ordinary course
> of business shall be given pursuant to
> Rule 2002(a)(2), (c)(1), (i), and (k) and, if
> applicable, in accordance with § 363(b)(2) of the
> Code."  Rule 2002 requires the bankruptcy court
> to give
>
> > the debtor, the trustee, all creditors and
> > indenture trustees at least 21 days' notice
> > by mail of:
> >
> > > . . . .
> >
> > > (2)  a proposed use, sale, or lease of
> > > property of the estate other than in
> > > the ordinary course of business, unless
> > > the court for cause shown shortens the
> > > time or directs another method of
> > > giving notice; [and]
> >
> > > (3)  the hearing on approval of a
> > > compromise or settlement of a

> controversy other than approval of an
> agreement pursuant to Rule 4001(d),
> unless the court for cause shown
> directs that notice not be sent[.]

Fed. R. Bankr. P. 2002(a)(2)–(3).

> Appellants do not cite to any case law, let
> alone binding case law, where notice was required
> during a hearing for a Rule 9019 motion in order
> to consider a sale of claims under § 363.  In
> fact, "a bankruptcy court has the discretion to
> apply § 363 procedures to a sale of claims
> pursuant to a settlement approved under
> Rule 9019." In re Berkeley Del. Ct., 834 F.3d at
> 1040; see also id. ("We see no good reason why a
> trustee and the bankruptcy court cannot utilize
> the procedures of § 363 in certain settlements in
> order to ensure maximum value for the
> estate."). . . .

Motion for Stay Order, 2023 WL 2248385, at *5 (some alterations

in Motion for Stay Order).  Appellants again do not cite to any

case law concluding that separate notice must be given when a

Rule 9019 settlement uses § 363 procedures.  Their notice

argument fails for the same reason as it did before.  This

Court, however, elaborates further.

The bankruptcy court "'evaluated [the proposed

settlement agreement] both as a compromise under Rule 9019 and a

sale under § 363.'" [Appellants App'x No. 36 (Sale Order) at

¶ 21 (quoting Spark Factor v. Hjelmeset (In re Open Med. Inst.),

__ B.R. __ (9th Cir. B.A.P. 2022)).]  It concluded that the

settlement "proceeding is properly treated as a proceeding to

approve a settlement and authorize the sale of property of the

estate." [Id. at ¶ 23.]  Although the hearing on the Settlement Motion concerned the proposed settlement between the Trustee and McElrath, the bankruptcy court had a duty to consider whether the claims could "draw a higher price through a competitive process . . . ."  See In re Mickey Thompson, 292 B.R. at 422. This is, in part, "to maximize estate assets by requiring trustees and bankruptcy courts to consider whether there is a more attractive solution than that which the trustee has negotiated."  In re Open Med. Inst., 639 B.R. at 182 (citation and internal quotation marks omitted).  The bankruptcy court was not required to implement separate and formal sale procedures. See In re Mickey Thompson, 292 B.R. at 422.

Importantly, "section 363 and Rules 6004 and 9019(a) may overlap when property of the estate would be disposed of by way of a settlement."  Id. at 421.  This is relevant to Appellants' notice argument because, if Rule 6004, including the notice requirement under Rule 6004(a), overlaps with Rule 9019(a), which is the notice requirement for compromises and settlements, then Appellants did in fact receive notice of the settlement because they were parties to the Settlement Motion.  See, e.g., Appellants App'x No. 36 (Sale Order) at ¶ 10 ("Notice of the Settlement Motion was given to all creditors and parties in interest").  Requiring additional notice would be redundant under the particular circumstances of this case.

23

Moreover, Appellants were not ignorant of the fact that Nan was bidding on the claims before the final hearing on the Settlement Motion.  In fact, on two occasions the bankruptcy court "continued the hearing on the Settlement Motion to allow Nan to submit a proposal to acquire the estate's Claims against [Appellants]."  See id. at ¶ 13.  Before the Settlement Motion was filed, Nan had outbid Appellants, leading Appellants to increase their offer, which ultimately became the proposed settlement in the Settlement Motion.  See id. at ¶¶ 16–18.  Thus, Appellants were aware that Nan was bidding on the claims while the Settlement Motion was pending.  Ultimately, McElrath's counsel was instructed to withdraw McElrath's offer once Nan increased its offer and the bankruptcy court indicated it was inclined to deny the Settlement Motion.  McElrath withdrew the offer at his own peril because, again, the bankruptcy court was acting within its discretion to consider and approve competing offers during a Rule 9019 motion to maximize the value for the estate.

The notice that Appellants received also comports with the fundamental principles of notice:

> Notice has been explained by the Supreme Court in Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306 (1950): "[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of

> the pendency of the action and afford them an
> opportunity to present their objections." Id. at
> 314 (citations omitted). "The notice must be of
> such nature as reasonably to convey the required
> information . . . and it must afford a reasonable
> time for those interested to make their
> appearance." Id. (citations omitted).

In re Farina, BAP No. NC-22-1071-TBF, 2022 WL 17484959, at *6

(B.A.P. 9th Cir. Dec. 7, 2022) (alterations in In re Farina).

Appellants received the required information and made an

appearance.  The notice they received was sufficient.

Because Appellants had notice of their Settlement

Motion and the bidding that took place before and during the

hearings on the Settlement Motion, they were not required to

receive subsequent notice that the bankruptcy court was going to

approve Nan's offer to the Trustee.  Appellants' notice argument

therefore fails.

### 2.   **The Trustee's Business Judgment**

Appellants next argue the bankruptcy court erred

because it overruled the Trustee's business judgement.  See

Amended Opening Brief at 31-33.  Appellants' contention is

unconvincing.

Appellants rely on a case from the United States

Bankruptcy Court for the District of Idaho to argue that "'[i]t

is **inappropriate** for the court to substitute its own judgment as

to the wisdom of a proposed settlement for that of the

trustee.'"  [Amended Opening Brief at 32 & n.142 (alteration and

emphasis in original) (quoting In re Rake, 363 B.R. 146, 152 (Bankr. D. Idaho 2007)).] But, Appellants omit important context in that case. The bankruptcy court in In re Rake also stated that "a trustee's evaluation of the merits and wisdom of settlement is not alone determinative. The Court is not permitted to act as mere rubber stamp but, rather, **must make an independent determination that the compromise is fair and equitable**." 363 B.R. at 152 (emphasis added) (citations and internal quotation marks omitted).

Ninth Circuit precedent holds that "the trustee, as the party proposing the compromise, has the burden of persuading the bankruptcy court that the compromise is fair and equitable and should be approved." In re Open Med. Inst., 639 B.R. at 180 (brackets, quotation marks, and citation omitted). In determining whether a compromise or settlement is fair and equitable, "a bankruptcy court is **obligated to consider** . . . whether any property of the estate that would be disposed of in connection with the settlement might draw a higher price through a competitive process . . . ." In re Mickey Thompson, 292 B.R. at 421–22 (emphasis added). Furthermore, "[t]he bankruptcy court has great latitude in approving compromise agreements." In re Open Med. Inst., 639 B.R. at 180 (quotation marks and citation omitted). The bankruptcy court, therefore, was within its discretion to consider competing offers.

In any event, the Trustee's business judgment could not have been overridden because the Trustee agreed with the bankruptcy court that Nan's oral offer was better than McElrath's offer.  For example, after Nan made the oral offer, counsel for the Trustee stated that

> before seeing in writing the McElrath Defendants' mass proposal, the Trustee filed a statement . . . in which the Trustee noted the $1.25 million offer, then compared to the $1 million offer, from the McElrath Defendants was better -- was higher and better simply because it was a quarter million dollars higher than the McElrath Defendants' settlement offer.
>
> Given what [counsel for Nan] just put on the record, I don't think the Trustee can state that the Nan offer is worse.  Put another way, **the Nan offer certainly appears to be better for the estate** relative to the 1.25 million McElrath offer.

[Appellants App'x No. 34 (5/16 Settlement Motion Hearing Trans.) at 6 (bold emphasis added) (some emphases omitted).]  The bankruptcy court replied: "I am going to approve the offer that [Nan's counsel] just put on the record on behalf of Nan, Inc. **The Trustee has, I think, correctly stated that the proposal is the best proposal on the table**."  [Id. (bold emphasis added) (some emphases omitted).]  Accordingly, Appellants' argument that the bankruptcy court overruled the Trustee's business judgment fails.

27

3.   __Good Faith and Proper Purpose__

Appellants next argue that Nan's offer was not proposed in good faith and without a proper purpose.  See Amended Opening Brief at 34.  The Court disagrees with Appellants and reiterates its analysis from the Motion for Stay Order, which also applies here:

> "'Good faith' encompasses fair value, and further speaks to the integrity of the transaction. Typical 'bad faith' or misconduct, would include collusion between the seller and buyer, or any attempt to take unfair advantage of other potential purchasers." In re 240 N. Brand Partners, Ltd., 200 B.R. 653, 659 (B.A.P. 9th Cir. 1996) (quotation marks and citation omitted).  Although Appellants take issue with Nan's offer, they fail to show any collusion or attempt to take advantage of other potential purchasers.
>
> Ultimately, the bankruptcy court concluded that "[i]n the circumstances of this case, it is appropriate to apply § 363 procedures to [the] Proposed Settlement.  The Trustee entertaining competing bids is procedurally proper and necessary to maximize the recovery of the estate." [BK 18-1084, Sale Order at 7.]  The bankruptcy court ruled that "[t]he sale of the Claims to Nan pursuant to the May 16th Offer is in the best interests of creditors and will result in more benefit to the estate than the Proposed Settlement with the McElrath Defendants would have." [Id. at 7-8.] . . .

Motion for Stay Order, 2023 WL 2248385, at *5.  Appellants appear to be displeased with the sale of the claims because Nan outbid them, but there is no evidence that Nan and the Trustee either colluded with each other or took advantage of Appellants.

Thus, this Court rejects Appellants' contention that the sale was conducted in bad faith or for an improper purpose.

####     4.   **Summary**

Appellants fail to show that the bankruptcy court abused its discretion in approving the sale of the claims in the Adversary Case to Nan.  The bankruptcy court applied the correct legal authority in approving the sale, and its application of the legal rules were not "illogical, implausible, or without support in inferences that may be drawn from the facts in the record."  See In re Open Med. Inst., 639 B.R. at 180 (citing United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc)).  The Sale Order Appeal is therefore denied.

### CONCLUSION

On the basis of the foregoing, McElrath's Nan Claim Appeal, transmitted to this district court on January 31, 2022, McElrath's Sale Order Appeal, transmitted to this district court on July 15, 2022, and Lauwiliwili and CDI's joinder in the Sale Order Appeal, transmitted to this district court on August 1, 2022, are HEREBY DENIED.  The bankruptcy court's Findings of Fact, Conclusions of Law, and Order on Objection to Claim of Nan, Inc., filed on January 18, 2022, and the bankruptcy court's Findings of Fact, Conclusions of Law, and Order Denying Trustee's Motion to Approve Settlement Agreement with Defendants McElrath, 2149 Lauwiliwili LLC and CD Investment Limited

Partnership and Authorizing Sale of Estate's Avoidance Claims to Nan, Inc., filed July 1, 2022, are HEREBY AFFIRMED.

There being no remaining issues in this consolidated case, the Clerk's Office is DIRECTED to enter judgment and close the case on **July 5, 2023,** unless a timely motion for reconsideration of this Order is filed.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, June 20, 2023.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

DENNIS C. MCELRATH, ET AL. VS. NAN, INC., ETC; CV 22-00047 LEK-WRP; ORDER DENYING APPELLANTS' CONSOLIDATED APPEAL AND AFFIRMING THE BANKRUPTCY COURT'S JANUARY 18, 2022 ORDER AND JULY 1, 2022 ORDER